**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**IVORY HARRIS et al**                                               **PLAINTIFFS**

**V.**                                                          **CASE NO. 4:05CV180**

**COLDWELL BANKER REAL ESTATE CORP. et al**            **DEFENDANTS**

**MEMORANDUM OPINION**

This cause comes before the Court on motions filed by several defendants seeking to compel plaintiffs to arbitrate their claims, as well as other motions pending in this case which may be impacted by the Court's ruling on the arbitration issues. The Court has reviewed these motions and is prepared to rule.

The plaintiffs are Ivory Harris, Marvin Turner, Stacy Fleming, Elizabeth Taylor, Elnora Jones, Jessie Jones and Sallie Skinner, all of whom are residents of Leflore County, Mississippi. The defendants are several corporations and individuals alleged to have collectively engaged in a pattern of "racketeering activity" and to have violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 *et seq* ("the RICO statute" or simply "RICO"). For purposes of ruling on the instant motions, the relevant defendants are Hometown Mortgage Services, Inc. ("Hometown Mortgage") and State Bank & Trust Company ("State Bank". Jurisdiction is premised on the federal questions purportedly raised by the RICO claims under 28 U.S.C. § 1331, and the plaintiffs also claim supplemental jurisdiction on several pendent state law claims pursuant to 28 U.S.C. § 1367(b).

On September 19, 2005, Hometown Mortgage filed a motion to compel arbitration against all plaintiffs. Later, on October 19, 2005, State Bank filed a motion to compel arbitration against Elizabeth Taylor. On January 5, 2006, the plaintiffs filed motions to stay the pending motions to

compel arbitration while the plaintiffs seek discovery on the issue of whether the arbitrators of the American Arbitration Association ("AAA") are biased in favor of lenders such as State Bank and Hometown Mortgage. Later, the plaintiffs filed a two motions for leave to file out-of-time opposition to the motions to compel arbitration. The motions for leave to file out-of-time opposition are GRANTED, and the plaintiffs' briefs will be considered in the Court's analysis.

## ANALYSIS

Congress provided in the Federal Arbitration Act ("FAA") that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1999). Section Four of the FAA specifically contemplates that parties aggrieved by another party's failure to arbitrate under a written contract may file a petition in a United States District Court to compel that party to arbitrate their claims. 9 U.S.C. § 4 (1999). In addition, the FAA expresses a strong federal policy in favor of arbitration, and any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 857, 79 L.Ed.2d 1 (1983); Mouton v. Metropolitan Life Ins. Co., 147 F.3d 453, 456 (5th Cir. 1998).

The Fifth Circuit has directed courts to perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. R.M. Perez & Assocs., Inc. v. Welch, et al., 960 F.2d 534, 538 (5th Cir. 1992). First, the court must determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996).

2

The plaintiffs do not challenge the fact that both of these considerations weigh in favor of arbitration.

Once the court finds that the parties agreed to arbitrate, it must then consider whether any federal statute or policy renders the claims nonarbitrable. Perez, 960 F2d. at 538. In conjunction with this inquiry, a party seeking to avoid arbitration must allege and prove either that the arbitration provision itself was a product of fraud or coercion or that another ground exists at law or equity that would allow the parties' contract or agreement to be revoked. Sam Reisfeld & Son Import Co. v. S.A. Eteco, et al., 530 F.2d 679, 680-81 (5th Cir. 1976). The entirety of the plaintiffs' arguments against arbitration turn on questions of fraud and on public policy considerations.

A party must challenge the " 'making' of the agreement to arbitrate" itself to create a jury question, while allegations regarding the contract as a whole must go to arbitration. Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154 n.9 (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1805-06, 18 L.Ed.2d 1270 (1967)). See also Haynsworth v. The Corporation, 121 F.3d 956, 963 (5th Cir. 1997)(holding that arbitration clauses are not rendered unenforceable by allegations of fraud unless inclusion of arbitration clause itself was product of fraud or coercion).

It is undisputed that each of the plaintiffs executed a separate written arbitration agreement in connection with the various Notes, Deeds of Trust and other loan documents which lie at the heart of this case. None of the plaintiffs assert that he or she is functionally illiterate or was induced to sign the arbitration agreement through deliberate misrepresentation by the defendants. See American Heritage Life Ins. Co. v. Lang, 321 F.3d 533 (5th Cir. 2003)(holding that factual disputes precluded grant of motion to compel arbitration where illiterate plaintiff claimed to have been tricked into signing arbitration agreements without valid consent).

In their responses to the motions to compel, the plaintiffs expound at length on the purported evils of arbitration, which they contend violate both their constitutional rights to trial through the courts as well as public policy by preventing the creation of a body of law in areas governed by arbitration clauses. However, in light of the Supreme Court and Fifth Circuit precedents cited above, the Court declines the plaintiffs' invitation to strike down the FAA as unconstitutional. The right to a jury trial is not absolute and can be waived, as the plaintiffs did here by signing the arbitration agreements. Am. Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 711 (5th Cir. 2002)("The Seventh Amendment right to a trial by jury is limited by a valid arbitration provision that waives the right to resolve a dispute through litigation in a judicial forum"). The plaintiffs also suggest that the arbitration agreements are unenforceable because various defendants engaged in fraudulent conduct over the course of their business dealings with the plaintiffs, conduct which the plaintiffs argue is attributable to the defendants.

The plaintiffs concede that they did sign the arbitration agreements, but argue that the defendants only sought to bind them with an arbitration agreement because they feared exposure of its alleged fraudulent activity in a judicial forum. Accepting this conspiracy theory as true, the simple fact remains that the plaintiffs *did sign the arbitration agreements*, and there is no meaningful evidence that they were induced to sign the agreements themselves through fraud or coercion, or at least no fraud or coercion which could not have been dispelled simply be reading the documents in question. Mississippi law is well settled that "a contracting party is under a legal obligation to read a contract before signing it." Terminix International, Inc.v. Rice, 904 So.2d 1051, 1056 (Miss 2004). Also, as noted above, only a dispute over the making of the arbitration agreement itself can manufacture a jury question, while disputes of the contract in toto (which appears to be the dispute

4

here) is a question for the arbitrator.

The plaintiffs also suggest that the arbitration clauses were procedurally and substantively unconscionable. Indicia of procedural unconscionability include lack of knowledge and/or voluntariness, inconspicuous print, the use of complex or legalistic language, disparity in sophistication or bargaining power and/or a lack of opportunity to study the contract and ask questions. East Ford, Inc. v. Taylor, 826 So.2d 709, 714 (Miss. 2002). Except for claims regarding the plaintiffs' relative sophistication, none of these indicators is present in the case at bar. The arbitration agreement plainly and clearly explained the rights that the plaintiffs would be surrendering by signing, and there is no evidence before the Court that the plaintiffs were denied opportunity to study the agreement, to seek advice regarding the agreement or even that signing the agreement was a prerequisite to obtaining the loan. Substantive unconscionability, on the other hand, requires the plaintiff to show that the terms of the arbitration agreement, freely entered into, are oppressive. Taylor, 826 So.2d at 714 (identifying waiver of choice of forum and waiver of certain remedies clauses as contract terms held to have been unconscionable). The plaintiffs have come forward with no such evidence other than conclusory allegations that the arbitration process is hopelessly biased against plaintiffs and that they have no possibility of recovery in an arbitral setting. Such unsupported allegations are not sufficient to demonstrate substantive unconscionability.

The plaintiffs also rely on the fact that certain individuals allegedly involved in inducing the plaintiffs to sign the loan agreements at the heart of this dispute have been charged with federal crimes pertaining to mortgage loan fraud. Based on that, the plaintiffs reiterate their position that the defendant corporations' goal in securing plaintiffs' signatures on the arbitration agreements was

to conceal its involvement in an alleged criminal enterprise. This argument is unavailing. No matter what fraudulent conduct individuals engaged in over the course of their entire dealings with the plaintiffs, absent proof that said individuals fraudulently induced the plaintiffs to sign *the arbitration agreement itself*, such alleged fraud is still an issue for the arbitrator. For purposes of determining whether the arbitration agreements are valid, the defendant corporations' motives in securing the agreements are irrelevant so long as they did not secure the agreements in an improper manner.

In addition to its arguments against the motions to compel arbitration, the plaintiffs also ask the Court to stay ruling on the motions pending the taking of 30(b)(6) depositions and other discovery from representatives of the AAA on the issue of the impartiality of arbitration as a forum for resolution of their claims. It appears to the Court that the plaintiffs' arguments on this point are foreclosed by the Supreme Court's holding in Gilmer v. Interstate/Johnson Lane Corp., where the Court held that "challenges to the adequacy of arbitration procedures are insufficient to preclude arbitration" and that the Court would not "indulge [the plaintiff's] speculation that the parties or the arbitral body will not retain competent, conscientious, and impartial arbitrators . . . ." 500 U.S. 20, 30-31, 111 S.Ct. 1647, 1654-55, 114 L.Ed.2d 26 (1991)(citations omitted).

Accordingly, in light of the foregoing, it is hereby ORDERED that (1) Hometown Mortgage's motion to compel arbitration is GRANTED; (2) State Bank's motion to compel arbitration is GRANTED; (3) the above-styled case is STAYED against these defendants pending resolution of the arbitration of those claims; (4) the plaintiffs' various motions to stay the motions to compel arbitration are DENIED; (5) the motions filed by Hometown Mortgage and State Bank which seek protective order and/or to quash various discovery request pertaining to the AAA are GRANTED.

A separate order summarizing this opinion shall issue this day.

This is the 1st day of June, 2006.

                                                                  **/s/ Michael P. Mills**
                                                   **UNITED STATES DISTRICT JUDGE**